# LAW OFFICE OF SAM A. SCHMIDT

**THE TRINITY BUILDING**
**111 BROADWAY**
**NEW YORK, N.Y.  10006**
**(212) 346-4666**
**FACSIMILE (212) 346-4665**
e-mail lawschmidt@aol.com

**Sam A. Schmidt, Esq.**

Shameeda Mohammed, Paralegal

**Of Counsel**

Peter Nissman, Esq.

September 19, 2010

Hon. Dora L. Irizarry
United States District Judge
225 Cadman Plaza East
Brooklyn, N.Y.  11201

    Re:  *United States v. Rodney Townsend*
     08 Cr. 635 (DLI)

Dear Hon. Judge Irizarry:

   Rodney Townsend will come before your Honor for sentencing knowing that he will receive a sentence of at least five (5) years incarceration and likely much greater because of his status as a career offender under the Guidelines and a very severe Guideline range. We hope that this submission will persuade your Honor that a sentence of ninety-two (92) months is "sufficient but not greater than necessary to comply with the purposes [of sentencing] set forth in" §3553(a)(2).

   This letter also sets forth our objections and corrections to the presentence report (PSR.)

**Role in the Offense**

   We object to the role in the offense adjustment found in paragraph 45 of the PSR.  We dispute some of the factual allegations related to this issue.  Notwithstanding such dispute, we believe that even under the factual allegations found in the PSR, defendant is not a supervisor.[1] Second, in claiming that the offense involved more than five participants, the PSR assumes that the offense conduct includes everyone charged in the Indictment. Consistent with the

---

[1] The determination that Tucker and Greene are not supervisors are inconsistent with the finding that Mr. Townsend is. This presents factual issues as well and one of a due process violation.

1

**LAW OFFICE OF SAM A. SCHMIDT**

**Sentencing Letter to Hon. Dora L. Irizarry**   *United States v. Rodney Townsend*
**September 19, 2010**                            **08 Cr. 635 (DLI)**

determination of the quantity of crack cocaine that defendant is being held accountable, a conspiracy to distribute crack cocaine - at most includes Tucker, Greene, Kemp and the defendant. Therefore, even under the PSR factual allegations, the adjustment would be two points, not three points.

   In the instant case, there are a number of factual allegations found in the PSR that mitigate against a determination that Rodney Townsend was a manager. During the pendency of the conspiracy, Mr. Townsend not only dated Ms. Kemp, he often resided in her apartment. It was this fact that caused him to contribute money to pay the rent, not for any narcotics activity. Of course, because he often stayed in the apartment and the focus of the criminal activity was at that housing project, much of the conduct related to his offense occurred there. There was not a *quid pro quo* for the "use" of Ms. Kemp's apartment. That Ms. Kemp was home when Mr. Townsend was not, thereby completing a sale to the undercover officer does not make Mr. Townsend her manager. Nor does her conduct, by her own statements, lead to the conclusions that Mr. Townsend "recruited" Ms. Kemp to the conspiracy.

   That Tucker sometimes gave money to Ms. Kemp for his use of the apartment and was not considered a manger by the Government and this determination was accepted by your Honor is a significant fact that further mitigates against considering Mr. Townsend as a manager. As the Government noted in its April 10, 2010 letter, at page 4, to the court, Tucker was willing to take advantage of Kemp's apartment that was made available though Townsend's relation with her. In fact, Tucker took advantage of a crack addict and also used that addict's apartment to sell drugs as well and was still not found to be a manager. Ms. Kemp also indicated that Tucker paid her $40 and $192 to use her apartment. *PSR ¶ 31,-32.*

   By her own statements, Ms. Kemp has limited the times that she has "dealt" crack. We do understand that a lay person's understanding of what constitutes distribution many not include the concepts of acting in concert and conspiracy and is not determinative as to her culpability. However, it certainly is relevant as to whether she believed she was "recruited" or was being "managed" by another. Included in her statement is that she sold some crack for Tucker, others and on her own. The regular activity that she participated involved "Kevin," "Frankie" and co-defendants, Greene and Tucker. On one occasion she related that she sold crack from her apartment for Tucker and Mr. Townsend. *See ¶¶ 27-33.* Ms. Kemp was selling crack both from inside and outside of her apartment for herself and others. She was not recruited to sell, she was already selling. She had already allowed others to use her apartment to sell or store narcotics. In fact, heroin found in a jacket in her apartment was attributed to Tucker. ¶ 25. Notwithstanding the Government's statement that Ms. Kemp did not assist Tucker on his negotiated sales, Ms. Kemp explained that she did. *PSR ¶ 29.*

   As the Second Circuit has often said "in light of the very significant impact of the U.S.S.G. § 3B1.1(b) enhancement where the base offense level is high--has cautioned that '[a]

LAW OFFICE OF SAM A. SCHMIDT

| | |
|---|---|
| **Sentencing Letter to Hon. Dora L. Irizarry** | *United States v. Rodney Townsend* |
| **September 19, 2010** | **08 Cr. 635 (DLI)** |

judge should be rather confident that such an enhancement is warranted before including it in a sentencing decision." *United States v. Birkin,* 366 F.3d 95, 101-02 (2d Cir .2004) citing *United States v. Guichardo,* No. 94 Cr. 1055, 1999 WL 194956, at *4 (S.D.N.Y. Apr. 8, 1999) (quoting *United States v. Cotto,* 979 F.2d 921, 923 (2d Cir. 1992)). In the instant case, the evidence in this case is not sufficient for the Government to meet the burden of proof for the enhancement.

**Quantity of Crack Cocaine**

We do not dispute the quantity of crack used to calculate the Guidelines. As noted above, because of Mr. Townsend's criminal history, the quantity calculations are less significant for Guidelines calculation but are still important in determining the appropriate sentence under the factors found within 18 U.S.C. § 3553(a). Under *Booker* and its progeny, courts must exercise their discretion in new ways to advance the statutory goals of sentencing. In drug cases, courts may no longer mechanically apply the custody ranges set forth in the Sentencing Table, for doing so invites misapprehending "the seriousness of the offense," 18 U.S.C. §3553(a)(2)(A), enhancing rather than avoiding "unwarranted sentence disparities," 18 U.S.C. §3553(a)(6), and neglecting the wide array of statutory sentencing factors, 18 U.S.C. §3553(a). The Supreme Court*, in Kimbrough* and *Spears,* recognized that the quantity-driven sentencing table frequently conflicted with the statutory sentencing purposes as it related to crack cocaine when it ordered the district court to resentence a defendant.

The total quantity of narcotics used to calculate Guidelines levels for long term conspiracies generally inflate or overstate a street level dealer's culpability, especially when the narcotics is crack. This is true in the instant case. Mr. Townsend, as did co-defendants, sold small quantities of crack that eventually added up to a significant amount. For Mr. Townsend, the calculation, 47.45 grams, included the crack cocaine sold by Donyea Tucker, Michael Greene and Shameka Kemp because they often steered sales to one another when one did not have crack to sell, shared their supplies or, at times, sold together.

Mr. Townsend's calculations also include a larger quantity, 61.3 grams. This quantity is the result of Mr. Townsend sending the a confidential informant, "Steve-O" to see "Butch."[2] Steve-O, a friend of Mr. Townsend, sought to buy a quantity of crack that Mr. Townsend was not capable of obtaining so he suggested Steve-O try to get it from Butch. As Mr. Tucker explained, it was he, not Mr. Townsend that brought Steve-O to one of Butch's underlings. PSR ¶¶ 14, page 7. Ultimately, Steve-O was able to make a purchase 61.3 grams through Butch's organization and though Mr. Townsend did not receive compensation for those sales, he understands that he is

---

[2] Steve-O (whose last name we will not use because of his status as a CI) was a long time friend of Mr. Townsend. It was Steve-O who was selling drugs in Pennsylvania and persuaded Mr. Townsend and Tucker to join him resulting in Mr. Townsend's Pennsylvania arrests and the warrant for co-defendant Tucker.

3

LAW OFFICE OF SAM A. SCHMIDT

**Sentencing Letter to Hon. Dora L. Irizarry**          *United States v. Rodney Townsend*
**September 19, 2010**                                   **08 Cr. 635 (DLI)**

legally responsible for that quantity in the Guidelines calculations.[3]  Significantly, however, Mr. Tucker noted that he could not deal directly with Butch because he, Tucker, did not deal in sufficient quantity to merit direct dealings.  This is also true for Mr. Townsend, further demonstrating the inadequacies and defects in using quantity calculations to judge culpability. Simply, as often is the case, the total quantity of crack used to determine the Guideline Offense Level does not appropriately reflect the individual's culpability. In the instant case, as a street level dealer, Mr. Townsend was interchangeable with any of the other street sellers.

**The Factors in 18 USC §3553(a) as They Relate to Rodney Townsend**

        **The Circumstances of the Case**

        The significant factors relating to the circumstances of this case has been set forth in the PSR and in this submission above. Rodney Townsend was a street level dealer of crack cocaine who assisted others who did the same. Importantly, there are no allegations of any violence or weapons associated with this case.

        **Effect of Using Different Cocaine-Crack Ratio**

        In paragraph 164 the PSR states that the use of a different ratio would have no effect in Guidelines calculations.  Because Mr. Townsend is a career offender under the Guidelines, if this court used the ratio found in the Fair Sentencing Act of 2010, there would be little or no effect upon Guideline calculations whether or not the statute applies to his case.  The weight that is properly attributable to Mr. Townsend would place him within USSG §4B1.1(b)(B).  However, the effect of using the crack to cocaine ratio from the Fair Sentencing Act of 2010 (18:1) or the 1:1 ratio used by many district court judges is relevant in determining whether a downward departure is appropriate and more importantly, the determination of the appropriate sentence under 18 U.S.C. § 3553(a) factors.[4]

---

        [3]  I believe that the purchases of crack cocaine through Butch's organization is reflected in the companion Indictment for the other "distinct loosely-organized group."  PSR ¶ 2, page 4. Apparently, Tucker assisted on other sales as well. PSR ¶ 13.

        [4]  Under common law, the passage of the Fair Sentencing Act of 2010 would have extinguished all liability and punishment for the old ratio. Because there is no indication of any retroactivity in the new statute, it is assumed by some that  1 USC § 109, enacted in 1947, requires the use of the old ratio for conduct committed prior to the passage of the new statute. 1 USC § 109 provides:

                The repeal of any statute shall not have the effect to release or extinguish
                any penalty, forfeiture, or liability incurred under such statute, unless the

4

LAW OFFICE OF SAM A. SCHMIDT

**Sentencing Letter to Hon. Dora L. Irizarry**   *United States v. Rodney Townsend*
**September 19, 2010**                            **08 Cr. 635 (DLI)**

Under USSG §4B1.1(b)(B), Mr. Townsend's base offense level is 34.  Using a 1:1 cocaine to crack ratio without consideration of the career offender Guidelines the base offense level would be 18.  Using the ratio in the Fair Sentencing Act of 2010, the base offense level would be 26.  With a reduction of three levels for acceptance of responsibility, the Guidelines ranges under criminal history category VI vary greatly; 188-235 months (career offender), 41-51 months (1:1 ratio), 92-115 months (18:1 ratio). In determining the appropriate sentence under 18 USC 3353(a) factors we respectfully suggest that your Honor consider the enormous differences between the career offender Guideline and that of the Guideline range without the offense level increase but reflecting the proper criminal history category of VI.

### The History and Characteristics of the Defendant

As the PSR describes in paragraphs 110-114, Mr. Townsend had a difficult and unfortunate childhood. Of course, this does not excuse his conduct in this and his prior cases. It does, however, provide insight into some of his conduct.  For example, Mr. Townsend was physically abused as a small child.  This often results in turmoil in one's relationships later in life.  It is certainly true of Mr. Townsend's relationship with Ms. Steed, the mother of his child M.

Notwithstanding a history of drug abuse and criminal conduct, there are some positive attributes of Mr. Townsend.  Danika Matthews described a man with positive attributes as well as some negative one, most obvious is his quick temper. She confirms the good relationship that Mr. Townsend has with his son.  Ms. Mathews relationship with Mr. Townsend did not have the volatility evidenced in the relationship that he had with Ms. Steed demonstrating some growth and maturity since 2004. Likely, this growth is the result of fatherhood, as shown by the description given by Ms. Steed  of the care and kindness that Mr. Townsend has shown with his

---

repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability. The expiration of a temporary statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the temporary statute shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability.

However, the Fair Sentencing Act of 2010 does not repeal the statute, it simply amends it. Since 1 USC § 109 changed the common law as to this point, it must be strictly construed.  Thus, an amendment of a statute should not implicate  1 USC § 109.

LAW OFFICE OF SAM A. SCHMIDT

| | |
|---|---|
| **Sentencing Letter to Hon. Dora L. Irizarry** | *United States v. Rodney Townsend* |
| **September 19, 2010** | **08 Cr. 635 (DLI)** |

five year old son. With an understanding of his childhood, Mr. Townsend's relationship with his son is a worthy accomplishment and demonstrative of the changes he is capable of making, even in his thirties.

We do not intend to minimize the seriousness of the problems of domestic violence and abuse, for Mr. Townsend is aware of how serious such conduct is and how much trouble his temper and lack of self control has caused him. He knows he was not a good companion to Ms. Steed and has been punished for many of his transgressions. However, he feels that he cannot allow one of the statements by Ms. Steed go unanswered. While he acknowledges that the relationship was volatile and he was, at times, aggressive and inappropriate towards her as well as unfaithful, Mr. Townsend denies stabbing Ms. Steed. They were together, on and off since 1995. He was quick tempered and often unfaithful which angered Ms. Steed His conduct during the period of time between 1998-2000 was inexcusable. Ms. Steed did not hesitate to contact the police and have him arrested. In fact she did have him arrested in 2004 but there was no claim of a stabbing. PSR ¶ 87-88.

Importantly, notwithstanding her criticisms of Mr. Townsend, Ms. Steed was supportive of him and was in regular contact while he was incarcerated. Counsel often spoke to her during until this past winter. Ms. Steed visited with him, sent money to his commissary and even forwarded Mr. Townsend the scribblings of their son, M, Exhibit A including the envelope dated September 23, 2009. For the past eight (8) months or so, Ms. Steed has had very little contact with him.

**Criminal Record**

As his criminal record reflects, Mr. Townsend has been involved with narcotics for a substantial period of time. His prior felonies are all narcotics related. His misdemeanor convictions reflect his temper and his lack of self control. As Judge Sifton noted in *United States v. Hodges*, 2009 WL 366231 (EDNY), there is no post-*Booker* prohibitions from considering a defendant's drug abuse especially as it relates to his prior convictions under 18 U.S.C. § 3553(a)(1). *Id.* at 8.

We object to the characterization of the offense at paragraph 69. Though the allegation found in that paragraph relates to extremely violent and dangerous behavior, the charges filed in court appear to have been the "B" misdemeanor Menacing, and the "A" misdemeanor Criminal Possession of a Weapon in the 4th Degree. These charges are inconsistent with allegations that Mr. Townsend shot at a person six times. In fact, Mr. Townsend was arrested and charged with much more serious offenses but after almost a year, he was offered a plea to an A misdemeanor with a conditional discharge. While we are all aware of the nature of plea bargains that sometimes occur in State court, this plea and sentence of conditional discharge is consistent with the total lack of evidence that Mr. Townsend shot at the complainant.

# LAW OFFICE OF SAM A. SCHMIDT

**Sentencing Letter to Hon. Dora L. Irizarry**          *United States v.  Rodney Townsend*
**September 19, 2010**                                                  **08 Cr. 635 (DLI)**

### Rodney Townsend's Nickname and Video

Mr. Townsend has been known by the nickname "Murder" and other nicknames.  The nickname "Murder" is not the result of murders but is one of those adopted by him during his attempts to make in the world of Rap music.  He tried the nickname of "Rod Murder" and "Rod Streets."  The use of his nickname "Rod Streets" can be found on the YouTube promo for New Hood City DVD at  http://www.youtube.com/watch?v=trRL5VWa40E at approximately 7:30 into the video.

It is unfortunate that with all of the faults and criminal conduct that Mr. Townsend has acknowledged, the Government and PSR views this video as a documentary. Mr. Townsend has acknowledged his narcotics dealing. He has acknowledged his frequent inappropriate, and at times, criminal conduct towards others. The "kicking" and "beating" of a "known drug addict" and the contact with the woman shown in the video were staged events. This is a rap video, perhaps not a particularly good one with images of drugs and violence.  But it is a rap video! It was made to sell music and an image.  Did Mr. Townsend relish his reputation? Yes.  Was his reputation the result of committing murder or shooting people or at them. No.  To claim that counsel seeks to "minimize the significance of the defendant's alias" demonstrates that both the Government and the PSR view Mr. Townsend as such. This is simply wrong and unfair. In fact, during the period covered in the Indictment, Mr. Townsend did not carry, display or possess a firearm.

### The Need for Adequate Deterrence, the Protection of the Public and Provide Just Punishment.

The consideration of the length of the previous sentences is a  significant factor in resolving the issue of what sentence is "sufficient but not greater than necessary to" satisfy the need for adequate deterrence, the protection of the public and to provide just punishment. Even prior to *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005) and the cases that followed, downward departures were available for those facing the severe penalties as a result of being classified as a career offender. *United States v. Mishoe*, 241 F.3d 214, 219 (2d Cir. 2001). Under the post *Booker* sentencing regime, the sentencing court now have far greater discretion in determining the appropriateness of a career offender sentence for an individual defendant. Thus, the factors that the court in *Mishoe* thought relevant in its determination is of equal or greater importance today when determining whether a sentence of such length is necessary.

Among the factors that the court noted should be considered were (1) the amount of narcotics involved in prior offenses, (2) the defendant's role in those offenses, (3) the sentences previously imposed on the defendant, and (4) the amount of time previously served compared with the applicable sentence as a result of his career offender status.  In *Mishoe*, the court permitted the consideration of such a departure when the prior offenses were street level narcotic

# LAW OFFICE OF SAM A. SCHMIDT

**Sentencing Letter to Hon. Dora L. Irizarry**     *United States v. Rodney Townsend*
**September 19, 2010**                              **08 Cr. 635 (DLI)**

sales. Here, Mr. Townsend's prior felony convictions are for street level sales or possession with intent to sell street level quantities of narcotics.

The court in *Mishoe* also noted the obvious,  "a major reason for imposing an especially long sentence upon those who have committed prior offenses is to achieve a deterrent effect that the prior punishments failed to achieve. That reason requires an appropriate relationship between the sentence for the current offense and the sentences, particularly the times served, for the prior offenses."  Thus, "in some circumstances, a large disparity in that relationship [between the punishment prescribed by criminal history category VI and the degree of punishment imposed for prior offenses] might indicate that the career offender sentence provides a deterrent effect so in excess of what is required in light of the prior sentences and especially the time served on those sentences as to constitute a mitigating circumstance present 'to a degree' not adequately considered by the Commission." *Mishoe,* 241 F.3d at 220 citing 18 U.S.C. § 3553(b).  As Judge Sifton noted in *Hodges*, the analysis in *Mishoe* preceded *Booker* thus the sentencing courts now have far greater discretion in determining the appropriateness of the use of career offender Guidelines. *Hodges* at *7.[5]

Additionally, the Career Offender Guidelines are fundamentally flawed because the Sentencing Commission has expanded the scope of the Career Offender Guidelines beyond the authority granted by Congress and because they are not a product of the empirical and experiential study typical of the Sentencing Commission's work.  The statutory authority for the Career Offender Guidelines is set forth in 28 U.S.C. 994(h).  The types of offenses to which the Career Offender Guidelines apply are carefully circumscribed.  Though Judge Sifton did not need to decide this issue in his decision in *Hodges*, he did find that Congress' intent was to "incapacitat[e] the tiny minority of criminals responsible for the overwhelming majority of violent crimes," citing *United States v. Chartier*, 970 F.2d 1009 (2d Cir.1992) that noted legislative history.

Here, Mr. Townsend was the recipient of repeated lenient treatment is the courts of New York and Pennsylvania. In 1993, as a seventeen (17) year old, he received ninety (90) days in jail, probation and youthful offender treatment for street level drug crimes, and the same concurrently, without YO, for the possession of a firearm and sixty (60) more days for possession of drugs. In 1994, as a nineteen (19) year old he received sentences of one to three (1-3) years for two drugs sales though he served only ten (10) months before being paroled and returned for an additional seven (7) months for a violation of the parole. In 1998 and 1999 he served four months and 30 days in custody, respectively for misdemeanors. In 2000, for possession of narcotics, Mr.

---

[5] Also noted by Judge Sifton were the numerous cases that cited the statistics that recidivism for older defendants was "markedly lower." *See* Hodges at *8.  Mr. Townsend is already thirty-five.

# LAW OFFICE OF SAM A. SCHMIDT

**Sentencing Letter to Hon. Dora L. Irizarry**      ***United States v. Rodney Townsend***
**September 19, 2010**                              **08 Cr. 635 (DLI)**

Townsend was sentenced to sixty (60) months, though fifty-four (54) months were suspended. Then sentences of sixty (60) days and twenty (20) days followed in 2003-4. Also in 2004 and 2005 it appears that Mr. Townsend served four (4) or five (5) months for narcotics offenses before absconding on work release. Thus, the longest period of incarceration for him appears to have been ten (10) months. Undoubtedly, neither probation, parole, work release nor the short terms of imprisonment were sufficient to act as an adequate deterrent for Mr. Townsend.[6]

What kind of sentence would "...afford adequate deterrence to criminal conduct, ...protect the public from further crimes of the defendant; and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner? " 18 U.S.C. 3553(a)(2). As the court in *Mishoe* noted "[i]f, for example, a defendant twice served five or six years and thereafter committed another serious offense, a current sentence might not have an adequate deterrent effect unless it was substantial, perhaps fifteen or twenty years. Conversely, if a defendant served no time or only a few months for the prior offenses, a sentence of even three or five years for the current offense might be expected to have the requisite deterrent effect." *Ibid*. Mr. Townsend fits somewhere in between, the leniency he previously received, at most ten (10) months incarceration, was not sufficient. The lengthy sentence resulting from the career offender calculations more than necessary. *See Mishoe* 241 F.3d at 220, *Hodges*, 2009 WL 366231 "7-8.

**Conclusion**

Winston Churchill said of democracy that "it is the worst form of government except all those other forms that have been tried from time to time." The same may be said about judicial discretion that allows for "individualized justice" when determining the appropriate sentence. Certainly, permitting intelligent and experienced jurists the opportunity to seek "individualized justice" is better than the alternatives. As the Ninth Circuit observed

> Sentencing is a difficult art. It is easy to make it mechanical. It is impossible to make it scientific in the sense of an hypothesis validated or invalidated by experiment. It is, however, an act of reason as the judge looking at this particular person and the circumstances of the crime that this particular person has committed makes a judgment following the prescriptions of the statute. This act remains to be done.

*United States v. v. Diaz-Argueta* 447 F.3d 1167, 1171 (9th Cir. 2006).

---

[6] In the recommendation, the PSR states that Mr. Townsend "spent the majority of his adulthood in custody." This is not accurate. It appears that the cumulative sentences actually served for his criminal conduct since he was seventeen (17) years old in 1993 until his arrest in this case in 2008 is only 41 months.

# LAW OFFICE OF SAM A. SCHMIDT

**Sentencing Letter to Hon. Dora L. Irizarry**          *United States v. Rodney Townsend*
**September 19, 2010**                                   **08 Cr. 635 (DLI)**

Determining the appropriate sentence for Rodney Townsend can be simple if one follows the recommendation of the Department of Probation and gives Mr. Townsend the highest end of whatever is the appropriate Guideline range. It would be simple if one followed the likely recommendation of the Government and sentence Mr. Townsend to somewhere within the Guideline range. It becomes more difficult, more art than science (or math) if one goes beyond the mechanical calculations of the Guidelines.

Judge Weinstein made an important observation in a case he decided prior to *Booker*. Judge Weinstein said that sometimes a lengthy sentence required by a higher criminal history lessens, not increases, the likelihood of rehabilitation. *United States v. Hammond*, 37 F.Supp.2d 204 (EDNY 1999).

Here, no matter what sentence is given to Mr. Townsend, he will be on supervised release for at least four years, and if your Honor follows the recommendation of the PSR which we do not oppose, for five years. Supervised release, as supervised by the United States Department of Probation is not State parole, probation or work release. This supervision will provide these extra years of protection to the public.

Five years is the mandatory minimum in this case. As demonstrated earlier, notwithstanding the career offender increases, if Mr. Townsend's Guidelines were determined solely by his criminal history category and a 1:1 ratio for crack to cocaine, his Guideline range would be as low as 41-51 months, which would mean the minimum sentence would be sixty (60) months or five years. Though Mr. Townsend has an irrational hope for such a sentence, he knows he does not deserve it. At the 18:1 ratio, his Guideline range would be 92-115 months, seven and one half years to nine and one half years. If your Honor sentences Rodney Townsend to 92 months, he will serve seven and one half years (maybe one less for good behavior). This would be a sentence nine (9) times greater than he has ever served before. Because he will be in a federal facility for a much greater time than spent in any State facility, this sentence will permit him to deal with his addiction problems, his anger and temper issues, study and obtain his GED, maintain contact with his son and reconnect with him and the rest of his family during his incarceration and when he is released.

We respectfully request that your Honor sentence Rodney Townsend to a sentence of ninety-two (92) months, a very substantial sentence but one that is "sufficient but not greater than necessary to comply with the purposes [of sentencing] set forth in" §3553(a)(2).

**LAW OFFICE OF SAM A. SCHMIDT**

**Sentencing Letter to Hon. Dora L. Irizarry**          *United States v.  Rodney Townsend*
**September 19, 2010**                                   **08 Cr. 635 (DLI)**


      Thank you for your Honor's consideration.


               Sincerely yours,

                  /s/

               Sam A. Schmidt
               Attorney for Defendant
               Rodney Townsend

cc:     AUSA Matthew Amatruda (By ECF and E-mail)

      Rodney Townsend

11